**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**NORMAN FINK,**

                       **Plaintiff,**

     **v.**                                    **5:20-CV-344 (TJM/TWD)**

**MICHAEL CATALANO, and NATHAN**
**MORAN,**

                       **Defendants.**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**THOMAS J. McAVOY,**
**Senior United States District Judge**

### DECISION & ORDER

Plaintiff Norman Fink filed this *pro se* Complaint on March 27, 2020. *See* dkt. # 1. He names as defendants Michael F. Catalano, then-Chief of Police for the Cortland, New York, Police Department, and Nathan Moran, a Cortland Police Officer. *Id.* at ¶¶ 14, 20. This case concerns an incident that allegedly occurred on September 29, 2019. *Id.* at ¶ 28. Following the Court's October 19, 2020 Decision and Order, dkt. # 14, three claims remain: (1) that Officer Moran unlawfully arrested Plaintiff on September 29, 2019, (2) that in the process of that arrest Officer Moran used excessive force by, i*nter alia*, causing Officer Moran's K-9 partner, Rush, to bite Plaintiff, and (3) that Chief Catalano provided inadequate training or supervision relating to Officer Moran's use of his police K-9. Defendants move for summary judgment seeking to dismiss the Complaint in its entirety.  *See* dkt. # 61.

After granting Plaintiff an extension of time to respond to the motion for summary judgment, Plaintiff filed a letter indicating that he wanted to withdraw the Complaint without prejudice. Dkt. # 66. Defendants indicate that have no objection to this request

1

but contend that, in light of the summary judgment motion that Plaintiff has not opposed, the claims in the Complaint should be dismissed with prejudice. *See* Dkt. # 67 ("Plaintiff now seeks to withdraw his Complaint without ever offering opposition to Defendants' presently pending dispositive motion. Defendants believe a dismissal with prejudice is required by the facts put forward, and Plaintiff's letter request is an admission he has no evidence in contravention of the same.").

Given the parties' positions, the Court will treat Defendants' motion for summary judgment as unopposed and will resolve it on the merits.

**STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)(quotation marks omitted). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of

2

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin*, 467 F.3d at 273. To defeat a motion for summary judgment, the nonmoving party must identify probative evidence in the record from which a reasonable fact finder could find in his or her favor. *Anderson*, 477 U.S. at 256–57; *see Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)("Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." ).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

"Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se." Elleby v. Martingano*, No. 9:20-CV-0693 (LEK/ML), 2021 WL 7161864, at *7 (N.D.N.Y. Nov. 30, 2021), *report and recommendation adopted,* 2022 WL 18604 (N.D.N.Y. Jan. 3, 2022)(citing *Cusamano v. Sobeck*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (citing cases)).  "This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring

that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment." *Id.* (citing *Cusamano*, 604 F. Supp. 2d at 426 & n.2). "As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules." *Id.* (citing *Cusamano*, 604 F. Supp. 2d at 426-27 & n. 4).

"Of course, when a non-movant willfully fails to respond to a motion for summary judgment, '[t]he fact that there has been no [such] response ... does not ... [by itself] mean that the motion is to be granted automatically.'" *Id.* (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)). "Rather, . . .  the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant." *Id.* (citing *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001); N.D.N.Y. L.R. 56.1.  "What the non-movant's failure to respond to the motion does is lighten the movant's burden." *Id.*

"For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted,[1] where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement–even when the non-movant was proceeding *pro se.*" *Id.* (citing *Cusamano*, 604 F. Supp. 2d at 427 & n.6;  *Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.")). "On

---

[1] Among other things, Local Rule 56.1(b) (previously Local Rule 7.1(a)(3)) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y.L.R. 56.1(b). It also provides that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* (underscoring in original).

4

summary judgment, '[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence,' but Federal Rule of Civil Procedure 56(c)(2) 'simply provides that the evidence must be capable of presentation in admissible form at the time of trial; it does not require that the materials be presented in an admissible form on summary judgment.'" *United States v. Katholos*, No. 17-CV-531 (JLS/HKS), 2022 WL 3328223, at *1, n. 2 (W.D.N.Y. Aug. 10, 2022) (quoting *Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 38 (W.D.N.Y. 2014) (internal quotation marks and citation omitted)).

## ANALYSIS

Plaintiff was served with a "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion" in compliance with the notification requirements for *pro se* litigants as set forth by Local Rule 56.2. *See* Dkt. #61-12. Accordingly, the Court deems admitted the properly supported facts in Defendants' Statement of Material Facts ("SMF"), dkt. #61-1.

### False Arrest Claim

To succeed on his false arrest claim against Officer Moran, Plaintiff must show Moran "intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). An arrest supported by probable cause will provide the arresting officers with legal justification for an arrest, and thus is a complete defense to a claim for false arrest. *See Bonide Prods., Inc. v. Cahill*, 223 F.3d 141, 145 (2d Cir. 2000); *Weyant*, 101 F.3d at 852; *Zanghi v. Incorporated Village of Old Brookville*, 753 F.2d 42, 45 (2d Cir. 1985). An active warrant for arrest will provide probable cause where the arresting officer knows of that warrant and the arrest was

predicated on the probable cause provided by the warrant. *Omor v. City of New York*,

2015 WL 857587, at *5 (S.D.N.Y. 2015)(citing *Martinez v. City of New York*, 340 F.

App'x 700, 701 (2d Cir. 2009); *United States v. Miller*, 265 F. App'x 5, 7 (2d Cir. 2008)).

      Here, there is no dispute that Plaintiff was arrested by Officer Moran on an active

warrant for a felony violation of probation, that Moran was aware of that arrest warrant

at the time of arrest, and that Plaintiff pled guilty to that charge in satisfaction of all

charges from September 29, 2019 as part of a documented plea bargain. *See* SMF ¶¶

4, 23, 44, 47.  As a matter of law, Plaintiff cannot succeed on his Fourth Amendment

claim false arrest claim against Officer Moran since the arrest was predicated on an

active warrant that Officer Moran was aware of. *Martinez*, 340 F. App'x at 701; *Miller*,

265 F. App'x at 7.  Accordingly, Defendants are entitled to summary judgment on

Plaintiff's false arrest claim against Officer Moran, which is dismissed with prejudice.

### Excessive Force Claim

      Excessive force claims brought pursuant to the Fourth Amendment "'are properly

analyzed under the Fourth Amendment's 'objective reasonableness' standard.'" *Shamir*

*v. City of New York*, 804 F.3d 553, 556 (2d Cir. 2015) (quoting *Graham v. Connor*,

490 U.S. 386, 388 (1989)). Using "excessive force renders a seizure of the person

unreasonable and for that reason violates the Fourth Amendment." *Id.*  "As the Supreme

Court has explained, whether police officers' use of force is 'excessive' must be judged

by 'whether the officers' actions are objectively reasonable in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation.'"

*Nuzzo v. Devine*, 494 F. Supp. 3d 232, 237 (D. Conn. 2020) (quoting *Graham*, 490 U.S.

at 397), *aff'd* 2021 WL 4695515 (2d Cir. Oct. 8, 2021).  To decide whether the force was

reasonable, a court should pay "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993) (quoting *Graham*, 490 U.S. at 396). "Moreover, '[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Nuzzo*, 494 F. Supp. 3d at 237 (quoting *Graham*, 490 U.S. at 396). "Thus, [t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation'" *Id.* (quoting *Graham*, 490 U.S. at 396–97, and citing *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (same)).

Although the Complaint alleges that Officer Moran used excessive force during the September 29, 2020 arrest by kicking Plaintiff in the back, the undisputed material facts indicate that the only physical force used by Officer Moran during the arrest was releasing his K-9 partner, Rush, to apprehend Plaintiff. *See* SMF at ¶¶ 22-45. Accordingly, any excessive force claim based on Officer Moran purportedly kicking Plaintiff is dismissed with prejudice.

Turning to that portion of the excessive force claim based upon being bit by Rush, the undisputed facts indicate that on September 29, 2019, Officer Knapp of the Cortland Police Department received an anonymous complaint that Plaintiff was sitting in his 2004 Ford Ranger in the dark of an empty parking lot located on Owego Street in

Cortland, New York. *See* SMF ¶¶ 4, 22.  Officer Moran, a certified K-9 officer, was assigned to respond. SMF ¶¶ 4, 18-21. Officer Knapp advised Officer Moran that Plaintiff had an active felony warrant for arrest. SMF ¶ 23. Plaintiff was known by Cortland police to be aggressive and confrontational to law enforcement. SMF ¶ 52.

Upon arriving at the scene, Officer Moran approached Plaintiff's vehicle and verbally ordered Plaintiff to get out of the vehicle and informed him that he was under arrest. SMF ¶ 24.  Plaintiff failed to get out of his truck as ordered.  SMF ¶ 25. Officer Moran opened the vehicle's door and Plaintiff pretended to be asleep. SMF ¶ 25. Officer Moran immediately backed up and issued Plaintiff additional verbal commands to exit the vehicle. SMF ¶ 25. Plaintiff then "popped up" with a lit cigarette and sat in his vehicle not obeying Officer Moran's commands to exit. SMF ¶ ¶ 26, 28. Officer Moran then gave Plaintiff additional verbal commands to exit the vehicle. SMF ¶ 26. All of Officer Moran's commands were loud, with Officer Moran characterizing them as being yelled. SMF ¶ 27.

Plaintiff then suddenly got out of the vehicle, "squared up" with Officer Moran, and, "in an aggressive manner," walked towards Officer Moran and Rush. SMF ¶ 28. As Plaintiff walked toward Officer Moran and Rush, Moran continued to back up and put distance between himself and Plaintiff while ordering Plaintiff to get on the ground. SMF ¶ 29. Plaintiff refused and continued to walk toward Officer Moran and Rush. SMF ¶ 30. Officer Moran then warned Plaintiff that if he did not get on the ground, Rush would be released and Plaintiff would be bit. SMF ¶ 31. Plaintiff did not comply with the warning that Rush would be utilized, and instead turned his back to Officer Moran and took 2 to 3 steps toward the back of his truck. SMF ¶ 32. Officer Moran gave another clear

8

warning that Rush would be utilized to secure Plaintiff's arrest if he did not comply with Officer Moran's order to get on the ground. SMF ¶ 33.

Plaintiff then turned back toward Officer Moran, clenched his fists, and failed to comply with the command to get on the ground. SMF ¶ 34. "Plaintiff was warned multiple times during this incident, loudly and clearly, that he was under arrest, and if he did not comply with the order to get on the ground Rush would be utilized and he would be bit." SMF ¶ 35. Plaintiff then turned a second time toward the back of his truck. SMF ¶ 36. Officer Moran then released Rush with the command for an "apprehension" of Plaintiff. SMF ¶ 37.

Rush engaged Plaintiff above the hip and below the rib cage, which brought Plaintiff to the ground. SMF ¶¶ 38-39. While grabbing his "break stick" to remove Rush from Plaintiff, Officer Moran ordered Plaintiff to put his hands behind his back and remain still or else he would be bit again, and Plaintiff complied. SMF ¶ 40. Officer Moran immediately removed Rush from Plaintiff when Plaintiff was brought to the ground. SMF ¶ 41. Emergency medical services were immediately called for Plaintiff's aid as required by Cortland Police Department General Order No. 467 once Plaintiff had been secured by other police officers who arrived while Rush was securing Plaintiff. SMF ¶ 42. Plaintiff was then brought to Guthrie Hospital in Cortland, New York for treatment. SMF ¶ 43.

Given the undisputed facts, Officer Moran's use of Rush to secure Plaintiff's apprehension was objectively reasonable. Plaintiff, who was known by police to be confrontational to law enforcement and who had an active warrant for his arrest, refused numerous commands to get on the ground and submit to being arrested. Further, after

9

feigning sleep and refusing commands to exit his vehicle, Plaintiff's suddenly got out of

his vehicle and confronted Officer Moran in an aggressive fashion, including walking

toward Officer Moran and Rush despite warnings to get on the ground and at one point

facing Moran with clenched fists. Plaintiff continued to disobey numerous commands to

get on the ground to be arrested, and despite warnings that Rush would be utilized to

secure his arrest if he did not comply, Plaintiff turned two times toward the back of his

truck where a weapon might have been secreted. The circumstances were tense and

rapidly evolving, and not only did Plaintiff actively refuse arrest and engage in

threatening behavior, he also disregarded clear warnings that if he did not comply with

Officer Moran's orders Rush would be released to secure his arrest. After Rush was

deployed, Officer Moran immediately removed him from Plaintiff once Plaintiff was

brought to the ground. Under the circumstances, it was not objectively unreasonable for

Officer Moran to deploy Rush to secure Plaintiff.  *See, Nuzzo*, 494 F. Supp. 3d at  237

("[T]he facts as proven do not establish that the police used excessive force. In light of

what the police knew about Nuzzo, the fast-moving sequence of events, and what

Troopers Leary and Naples reasonably believed when they instructed their dogs to

secure Nuzzo, it was not objectively unreasonable for them to believe that the

deployment of the dogs was appropriate to ensure the apprehension of Nuzzo and

without increasing a risk of injury to police officers. Nor was the length of time that the

dogs were deployed on Nuzzo objectively unreasonable."); *see, e.g., McKinney v. City

of Middletown*, 49 F.4th 730, 741 (2d Cir. 2022) ("It may be that an officer violates

clearly established law if he fails to give a warning before using a canine on a suspect

who is compliant or does not otherwise pose a threat, but deploying a police dog may

be objectively reasonable, even without a warning, when there is an immediate threat to the safety of officers and the community.")(internal footnote, quotation marks, and citation omitted).

Furthermore, Officer Moran is entitled to qualified immunity on this claim because a reasonable officer in the same circumstances could have determined that the challenged conduct was lawful. *See Muschette on Behalf of A.M. v. Gionfriddo*, 910 F.3d 65, 70 (2d Cir. 2018) ("An officer is entitled [to] qualified immunity if '*any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful.'") (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)).  At the time that Rush was deployed, Plaintiff had actively resisted arrest, engaged in threatening behavior, and ignored repeated warnings that if he did not comply with Officer Moran's direction to get on the ground or Rush would be deployed and would bite him. It would not have been clear to a reasonable officer that deploying Rush under these circumstances violated clearly established law.  *See Scott v. Lazure*, No. 3:19-CV-713 (VAB), 2020 WL 2615502, at *8–9 (D. Conn. May 22, 2020)("There are no Supreme Court or Second Circuit cases precluding the single use of a Taser or deploying a canine to stop a fleeing suspect who fails to heed a police officer's commands and actively resists arrest. . . . In the absence of cases holding similar conduct unconstitutional, the Court concludes that a reasonable officer in Sergeant Lazure's position would not understand his conduct to violate any clearly established law.")(citations omitted); *see, e.g, McKinney,* 49 F.4th at 741 ("McKinney posed … a threat when Officer D'Aresta deployed Hunter because, by his own admission, McKinney grabbed Officer Sebold's baton and tried to wrestle the

baton out of Officer Sebold's hand, became extremely combative, and charged towards the defendants before Hunter was released. In light of the threat McKinney posed, it would not have been clear to a reasonable officer that deploying Hunter without first providing a warning was unlawful in the situation [the officers] confronted.")(internal quotation marks and citations omitted).

Accordingly, Defendants are entitled to summary judgment on this claim. Plaintiff's excessive force claim against Officer Moran is dismissed with prejudice.

### Failure to Train or Supervise

As to Chief Catalano, Plaintiff alleges that:

17. At all times relevant to this complaint; Defendant Catalano was responsible as Chief of Police of the Cortland City Police Department for the supervision of the adequacy and performance of the training and conduct of the employee/officer officials under his control and command.

18. At all times relevant to this complaint; Defendant Catalano was personally aware of the acts of misconduct of the employee/officer under his control and command, as set forth in this complaint by:

(a) A detailed incident report filed by Defendant Moran and other employee/officer officials on [a] specified date of September 29, 2019, in which incident occurred.

(b) A detailed complaint dated January 8, 2020, informing Internal Affairs Unit of the Cortland City Police Department of the misconduct of employee/officer official as set forth within this complaint submitted by Plaintiff.

(c) Defendant Catalan's response as Chief of Police Official of the Cortland City Police Department, to Plaintiff's complaint filed with the Internal Affairs Unit denying any misconduct or wrongful acts of any employee/officer official under his control.

19. Defendant Catalano is sued in his individual capacity and intentionally failed to take action after learning of such conduct and/or performance of his employee/officer official under his control and command, and; exceeded the scope and course of his duties of his employment as Chief of Police through his knowledge and control by inadequately enforcing the proper procedures and supervision of the corrective training to maintain psychological[ly] fit and properly

12

trained officials to handle the K-9 unit dogs without violating any civil rights of citizens in the City of Cortland, within the State of New York.

Compl. at ¶¶ 15-19.

Plaintiff does not allege that Chief Catalano was present during the arrest and does not contend he could have stopped the incident.  Plaintiff also fails to allege that Chief Catalano ordered or encouraged Officer Moran to deploy Rush as he did, and does not allege any specific lapses in training by Catalano that led to Rush biting Plaintiff.  Likewise, Chief Catalano's denial of Plaintiff's Internal Affairs complaint is insufficient to create supervisory liability, and that complaint did not put Catalano on notice of a civil rights violation he needed to correct.  As the Court previously held, Chief Catalano could not be liable for the injuries caused by any violation of Plaintiff's constitutional rights simply because he failed to find Moran liable in an internal affairs investigation. Dkt. # 14 at 6 (citing *Amato v. City of Saratoga Springs*, 972 F. Supp. 120, 128 (N.D.N.Y. 1997)(granting summary judgment on a Section 1983 supervisory liability claim because defendant's "'misconduct' in the post-incident investigation cannot have caused, or even contributed to, the deprivation of plaintiff's right to be free from the use of excessive force, since that deprivation had already occurred.  In other words, [defendant's] conduct occurring after the alleged beating" did not cause the plaintiff's injuries)).

However, as the Court stated in addressing Defendants' motion to dismiss, "[r]ead liberally, Plaintiff's Complaint alleges that Defendant Catalano knew that the training he provided to Moran about handling dogs was inadequate and would cause violations of suspects' rights. If proved, those failings could represent deliberate

indifference to Plaintiff's rights and make Catalano liable."  Dkt. # 14, at 7.  This claim will be dismissed with prejudice.

First, as stated above, Officer Moran did not violate Plaintiff's constitutional rights. Thus, Chief Catalano's purported deficiencies in failing to train or supervise Officer Moran could not have caused Plaintiff a violation of his federally protected rights. *See Emanuel v. Griffin*, No. 13-CV-1806 JMF, 2015 WL 1379007, at *15 (S.D.N.Y. Mar. 25, 2015)("Plaintiffs' claims against Mattingly and Diacomanolis for failure to train and supervise and claims against the City of New York under *Monell,* 436 U.S. 658, must be dismissed. Such claims are valid only if there is an underlying constitutional violation.")(citing, *inter alia*, *Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir.2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (holding that the liability of supervisory official under Section 1983 presupposes an underlying constitutional violation); *Murphy v. N.Y. Racing Ass'n,* 76 F.Supp.2d 489, 500 (S.D.N.Y.1999) (holding that to state a valid Section 1983 claim under a theory of supervisory liability, the plaintiff must first show that the supervisor's subordinates actually violated the plaintiff's constitutional rights)); *see also Reinhart v. City of Schenectady Police Dep't*, 599 F. Supp. 2d 323, 336 (N.D.N.Y. 2009)("A failure to train claim cannot exist where no individual defendant has committed a constitutional violation.")(citing, *inter alia*, *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)).

Second, even assuming a constitutional violation occurred, the uncontested facts demonstrate that on November 14, 2018, Chief Catalano instituted General Order No. 467.  SMF ¶ 6.  General Order No. 467 governs the use of police K9s and addresses, *inter alia*, the required training for K9 officers, *see* SMF ¶¶ 14-17, the circumstances under which a K9 officer is permitted to deploy a K9 to effectuate an arrest, s*ee* SMF ¶10 (Order No. 467 allows for the use of a K9 by a Handler to "[Effect] the Arrest or preventing the escape of a person when reasonable grounds to believe the person has committed a felony against another person; possess a significant threat to another person; or places another person in imminent danger of personal injury, significant personal injury, or death."), and the circumstances under which a K9 officer is permitted to allow a K9 to bite a suspect. *See* SMF  ¶ 11 ("Order No. 467 allows Handler to permit the K9 to bite an individual where that individual poses an imminent danger to the officer or another person from serious physical injury or death."). The undisputed facts indicate that Officer Moran adhered to General Order No. 467 both before and during his arrest of Plaintiff on September 29, 2019.  SMF ¶ 6.  In this regard, the undisputed facts indicate that Officer Moran received all appropriate training as required by New York State to serve as a certified K9 handler, and followed the regulations of General Order No. 467 in connection with Plaintiff's arrest on September 29, 2019. *See* SMF ¶¶ 6-21, 40-43, 45. Inasmuch as the circumstances surrounding Plaintiff's arrest encompassed conduct contemplated by Order No. 467, Plaintiff fails to present evidence upon which a reasonable fact finder could conclude that Chief Catalano was deliberately indifferent to Plaintiff's rights.  He also fails to present evidence upon which a reasonable fact finder

could conclude that Defendant Catalano knew that the training he provided to Moran about handling dogs was inadequate and would cause violations of suspects' rights.

Third, Plaintiff's allegations are of a one-time occurrence which generally fails to provide a basis upon which to conclude that the supervising official was deliberately indifferent to a plaintiff's rights. *See D'Alessandro v. City of New York*, 713 F. App'x 1, 10-11 (2d Cir. 2017) (summary order) ("To establish a 'failure to train' claim, a plaintiff must generally demonstrate that there has been a 'pattern of similar constitutional violations by untrained employees.'")(quoting *Connick v. Thompson*, 563 U.S. 51, 66 (2011)); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("To prove [ ] deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious," such as through "proof of repeated complaints of civil rights violations[ ]...followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."); *Askew v. Lindsey*, 2016 WL 4992641, at *5 (S.D.N.Y. Sept. 16, 2016) (collecting cases holding that a single failure to discipline "cannot give rise to an inference of deliberate indifference without further evidence of a municipal policy or practice"). "While the Supreme Court has left open the possibility that a single incident could give rise to liability for failure to train or supervise, the Court has cautioned that only a 'narrow range' of circumstances would support such single-incident liability, where the 'unconstitutional consequences of failing to train [were] patently obvious.'" *Schnitter v. City of Rochester*, 931 F. Supp. 2d 469, 475 (W.D.N.Y. 2013), *aff'd*, 556 F. App'x 5 (2d Cir. 2014) (quoting *Connick*, 563 U.S. at 64).  In light of Chief Catalano's institution of General Order No. 467, no reasonable fact finder could conclude that Chief Catalano

was deliberately indifferent to circumstances indicating that unconstitutional consequences of failing to train were patently obvious.  Indeed, General Order No. 467 requires training of K9 officers clearly in an effort to avoid unconstitutional consequences of officers using K9 partners during arrests.

Accordingly, summary judgment is granted to Defendants on Plaintiff's claim against Chief Catalano, which is dismissed with prejudice.

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment, dkt. # 61, is **GRANTED,** and all remaining claims in this matter are **DISMISSED with prejudice.**  The Clerk of the Court may close the file in this matter.

**IT IS SO ORDERED.**

Dated: March 3, 2023

Thomas J. McAvoy
Senior, U.S. District Judge